IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARK WALSH,[1] | § | |
| | § | No. 316, 2025 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CK21-03133 |
| JENNIFER WALSH, | § | Petition No. 22-05692 |
| | § | |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: January 9, 2026
Decided: April 6, 2026

Before **TRAYNOR**, **GRIFFITHS**, and **LEGROW**, Justices.

## **ORDER**

After consideration of the parties' briefs and the Family Court record, it appears to the Court that:

(1)    Mark Walsh ("Ex-Husband") appeals the Family Court's order resolving matters ancillary to his divorce from Jennifer Walsh ("Ex-Wife"). After careful review of the parties' arguments, we affirm the Family Court's judgment.

(2)    The record reflects that the parties married on March 18, 2001. In March 2022, Ex-Husband petitioned for divorce, and the Family Court entered a divorce decree on August 23, 2022. At the parties' request, the court retained

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

jurisdiction over ancillary matters. Following an evidentiary hearing, the Family Court issued a written decision on May 16, 2025. Among other things, the Family Court: (i) instructed the parties to sell the marital home and divide the proceeds equally, (ii) ordered that the parties' marital assets and debts be split 50/50, and (iii) awarded Ex-Wife permanent alimony in the amount of $970.00 per month. Ex-Husband filed a timely motion for reargument, which the Family Court denied. Ex-Husband appeals.

(3) This Court's review of an appeal from the Family Court extends to a review of the law and the facts, as well as a review of the inferences and deductions made by the trial judge.[2] We will not disturb findings of fact unless they are clearly wrong and justice requires that they be overturned.[3] We review errors of law *de novo*.[4] If the Family Court has correctly applied the law, our standard of review is abuse of discretion.[5] When the determination of facts turns on the credibility of witnesses, this Court will not substitute its opinion for that of the trial judge.[6]

(4) Ex-Husband raises five claims of error on appeal: (i) the Family Court violated his due process rights when it denied his request for a continuance of the evidentiary hearing, (ii) the Family Court abused its discretion by ordering the sale

---

[2] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[3] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008).
[4] *Smart v. Smart*, 2015 WL 1530898, at *4 (Del. Apr. 6, 2015).
[5] *Id.*
[6] *Greene v. Greene*, 105 A.3d 989, 2014 WL 7010738, at *1 (Del. Nov. 25, 2014) (TABLE).

of the marital home without considering equitable alternatives, (iii) the Family Court improperly ordered the division of Ex-Husband's 401K plan but not the division of Ex-Wife's 401K plan, (iv) the Family Court's valuation of the parties' motor vehicles was not supported by the evidence, and (v) the Family Court erred when it awarded Ex-Wife permanent alimony. We address Ex-Husband's arguments in turn.

(5) Ex-Husband first argues that the Family Court erred when it denied his request for a continuance. The record reflects that the February 27, 2025 trial date was the *fifth* trial date scheduled in this matter. Trial was originally scheduled for June 5, 2023. In May 2023, the parties stipulated to a continuance of the trial, and the matter was rescheduled to November 15, 2023. Following an October 2023 teleconference with the parties, the court concluded that the parties would not be ready for trial in November because of outstanding discovery issues. The Family Court therefore set a new trial date of April 12, 2024. For reasons not entirely clear from the record, that trial date was later moved to October 1, 2024. After a case management conference held in September 2024, trial was rescheduled to February 27, 2025. Notably, Ex-Husband was represented by counsel from the filing of his petition for divorce in March 2022 until January 16, 2025, when counsel moved to withdraw. During this time, the parties exchanged discovery and engaged in motion practice related to their respective discovery requests. On January 29, 2025, Ex-Husband, proceeding *pro se*, moved for a continuance, citing his desire to retain new

3

counsel. On February 13, the Family Court granted counsel's motion to withdraw and denied Ex-Husband's motion for a continuance.[7]

(6) We review the Family Court's denial of a motion for a continuance for an abuse of discretion.[8] Here, Ex-Husband does not dispute that he had notice of the February 27 trial date, and the record reflects that he had more than ample time to prepare for trial.[9] Moreover, as noted above, Ex-Husband and Ex-Wife exchanged discovery and resolved their discovery disputes through motion practice in the months preceding the trial, which took place almost three years after the parties' divorce. "Trial judges are vested with the discretion to resolve scheduling matters and to control their own docket."[10] Under the circumstances, we conclude that the Family Court acted within its discretion when it denied Ex-Husband's request for another continuance.

(7) Ex-Husband next argues that the Family Court abused its discretion by ordering the sale of the marital property without considering whether Ex-Husband could buy out Ex-Wife's interest in the property or the "competent appraisal

---

[7] On February 20, apparently unaware that the Family Court had granted his motion to withdraw, Ex-Husband's former counsel filed a motion to withdraw his motion to withdraw together with a motion for a continuance. Following the February 27 trial, the Family Court found these motions to be moot—counsel's motion to withdraw had been granted and the evidentiary hearing had proceeded as scheduled.

[8] *Stevenson v. Simons*, 905 A.2d 747, 2006 WL 2048487, at *2 (Del. July 21, 2006) (TABLE).

[9] *See Tsipouras v. Tsipouras*, 677 A.2d 493, 496 (Del. 1996) (noting that procedural due process requires that parties whose rights are to be affected by the proceedings are entitled to notice and an opportunity to be heard).

[10] *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1238 (Del. 2012).

4

evidence."[11] The record belies Ex-Husband's contention concerning the sale of the marital property. Although Ex-Husband and Ex-Wife each attempted to introduce at trial a real estate appraisal of the marital home, Ex-Husband's real estate appraiser—Kendall Dixon—testified that both appraisals were performed more than two years ago and therefore could not be relied upon. The trial court therefore properly refused to consider the appraisals when determining the value of the marital home. Absent the parties' agreement as to value, the court was simply unable to assign a monetary value to the home without ordering its sale. We also note that, contrary to Ex-Husband's claim on appeal, the Family Court repeatedly asked Ex-Husband if he was willing to buy out Ex-Wife's share of the home (albeit, using Ex-Wife's higher appraisal as the basis for negotiation),[12] and Ex-Husband told the court that he was unwilling to do so. The Family Court has broad discretion when dividing marital property under 13 *Del. C.* § 1513,[13] and we conclude that the Family Court did not abuse its discretion by ordering the sale of the marital home here.

(8) Ex-Husband also argues that the Family Court failed to credit him with his share of Ex-Wife's retirement account, which was valued at $4,573 on the date of the parties' separation. But, in fact, the Family Court ordered half of the value of

---

[11] Opening Br. at 19.

[12] Dixon testified that real estate property values had generally increased since the parties' appraisals had been conducted.

[13] *Glanden v. Quirk*, 128 A.3d 994, 1001 (Del. 2015).

Ex-Wife's account ($2,286.50) be deducted from the amount Ex-Husband owed Ex-Wife from the division of his retirement account. In short, there is no merit to Ex-Husband's argument.

(9) Ex-Husband also challenges the manner in which the Family Court valued the parties' three automobiles. The Family Court's valuations of the parties' assets are findings of fact.[14] We will not set them aside if they are "sufficiently supported by the record and are the product of an orderly and logical deductive process."[15] Here, the parties presented conflicting valuations for the autos based in part on inaccurate mileage estimates, and not one of the estimates was based on a physical examination of the motor vehicle at issue. In light of the foregoing, we find that the Family Court's decision to assign an average of the parties' valuations to the motor vehicles—an approach that resulted in a higher estimated value for Ex-Wife's car to the benefit of Ex-Husband—was the product of a logical and deductive process.[16]

(10) Finally, Ex-Husband argues that the Family Court abused its discretion because it awarded Ex-Wife permanent alimony without making the findings required by the statute governing alimony, 13 *Del. C.* § 1512. To obtain an alimony

---

[14] *Boyer v. Boyer*, 531 A.2d 1000, 1987 WL 44964, at *2 (Del. Oct. 2, 1987) (TABLE).

[15] *Id.*

[16] *See Greene*, 2014 WL 7010738, at *3-4 (upholding the Family Court's "split the difference" approach to valuing the parties' condominium as the product of a logical and deductive reasoning process).

award, Ex-Wife had the burden to prove her dependency and her inability to support herself through "appropriate" employment.[17]  The Family Court found that she had done so.  And, contrary to Ex-Husband's position on appeal, the Family Court's decision reflects due consideration of the factors enumerated in Section 1512 and the deductions and inferences it made were the product of a logical and deductive reasoning process.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:


*/s/ Abigail M. LeGrow*
Justice

---

[17] *Smart*, 2015 WL 1530898, at *4.