Mark A. **HARPER**,[1] Respondent Below–Appellant,

v.

Carolyn **HARPER**, Petitioner Below–Appellee.

No. 619, 2002.

Supreme Court of Delaware.

Submitted: May 16, 2003.
Decided: June 23, 2003.

---

10. *Id.* at 111.

1. The Court, sua sponte, has assigned pseudonyms to the parties pursuant to SUPR. CT. R. 7(d).

Mark A. Harper, pro se, Dover, Delaware.

Carolyn Harper, pro se, Dover, Delaware.

Before VEASEY, Chief Justice, HOLLAND and STEELE, Justices.

PER CURIAM.

### *Procedural Background*

The respondent-appellant, Mark A. Harper ("Father"), filed an appeal from the Family Court's October 9, 2002 order denying his motion to reconsider the denial of his previous motion to reopen a Family Court judgment. By order dated August 26, 2002, the Family Court modified a prior consent order and granted to Carolyn Harper ("Mother") primary residential custody of the two minor children of Father and Mother, with visitation rights for Father.[2] Because we find that the Family Court's entry of what amounted to a default judgment against Father and its subsequent refusal to reopen that judgment constituted an abuse of discretion, we REVERSE the decision of the Family Court and REMAND this matter to the Family Court for expedited proceedings in accordance with this Order.

**2.** The younger of the two children has Down's syndrome, with a number of attendant health problems.

## Factual Background

The record reflects that Mother and Father have been litigating custody and visitation matters with respect to their two minor children since at least 1996. Trial was scheduled in the Family Court for August 22, 2000 on three petitions filed by Mother—one involving custody and two involving visitation. At that time, Father had primary residential custody of the children. On the date of the hearing, the parties indicated to the Family Court judge that they had reached agreement with respect to Mother's petitions. The agreement provided that the parties would continue to share joint legal custody, Father would continue to have primary residential custody and Mother would have visitation according to a set schedule. The Family Court issued a consent order reflecting the agreement of the parties on August 22, 2000 (later modified by consent of the parties on November 20, 2000).[3]

## Mother's Motion to Modify Consent Order

On June 4, 2002, Mother filed a motion to modify the November 20, 2002 order. In the motion, Mother alleged that the younger child had been scheduled for a tonsillectomy, but that Father had cancelled the surgery, thereby exposing the child to continuing viral infections and sleep apnea. She also alleged that Father missed a dental appointment for the older child, which he did not reschedule. Mother requested that she be granted primary residential placement so that the alleged "neglect will not persist." Father filed a response to the motion stating that the younger child is being seen by an allergy specialist to try to resolve the problem of infections and that both children are scheduled to see another dentist because their former dentist no longer accepts Father's dental insurance.

The record reflects that a thirty-minute hearing on Mother's motion was scheduled for 9:00 a.m. on August 26, 2002. On August 13, 2002, Father requested a continuance of the hearing on the ground that he had another court appearance scheduled for that date and needed more than 30 minutes to present the testimony of witnesses. The Family Court denied Father's request for a continuance.

## The Hearing on Mother's Motion

The hearing on Mother's motion took place on August 26, 2002. The Family Court judge noted that Mother was present, but Father was not. There was no inquiry by the judge concerning the reason for Father's absence. The record reflects that, once the judge ascertained that Mother desired to change the residential placement of the children and initiate a visitation schedule for Father, he said, "Okay. Keep the joint custody the same, just change the placement." He then told Mother she was "free to go."[4] On the same date, the Family Court issued its order, which modified the prior consent order by granting residential placement to Mother and visitation to Father. The order gave no reasons why the residential custody and visitation arrangements had been modified, and noted only that Father had failed to appear for the hearing.

## Father's Motion to Reopen Judgment

On August 28, 2002, Father filed a motion to reopen the Family Court's judgment[5] and an affidavit for priority

---

3. The parties agreed to two minor changes regarding visitation.

4. The transcript of the hearing, which consists of 2½ pages, indicates that the hearing took no more than 2–3 minutes.

5. FAM. CT. CIV. R. 60(b).

scheduling. He stated that, due to a miscommunication about childcare, he had arrived at the Family Court at 9:12 a.m., at which time he was told that the hearing had concluded. Father further stated that primary placement should not have been granted to Mother because of her past mental health problems and risk to the health and well-being of the children.[6] Mother responded to Father's motion and denied continuing mental health problems and that she had endangered the health of the children. She attached to her response copies of reports regarding the health problems of the parties' Down's syndrome child. The Family Court denied the motion to reopen the judgment, stating that Father had alleged no facts constituting excusable neglect.

### Father's Request for Reconsideration

On September 25, 2002, Father filed a request that his motion to reopen be reconsidered. On October 9, 2002, the Family Court denied Father's request on the ground that he had filed a notice of appeal in the Delaware Supreme Court, which divested the Family Court of jurisdiction. The record reflects that Father's notice of appeal was served on Mother on September 24, 2002, but was not filed in the Supreme Court until November 6, 2002.

### Father's Claims on Appeal

In this appeal, Father claims that the Family Court erred by: a) failing to apply the "best interests of the child" standard in determining whether primary residential custody of the children should be awarded to Mother; b) failing to consider his motion to reopen on a priority basis and by denying his motion to reopen; and c) denying his motion to reconsider on the ground that it lacked jurisdiction.

### Entry of Default Judgment Without Determining "Best Interests of the Child" Constituted Abuse of Discretion

The Family Court's entry of a default judgment against a party for failing to appear, plead or otherwise defend in accordance with the Family Court Rules is reviewed by this Court for abuse of discretion.[7] In this case, the Family Court's entry of a default judgment against Father without determining "the best interests of the child" in accordance with the required statutory factors[8] constituted a clear abuse of discretion.

Mother's motion requested a major change in the circumstances of the parties' two children, one of whom has serious health problems. The consent order in effect at the time of the hearing reflected the parties' clear intention that Father would maintain residential custody. The Family Court was obligated to conduct a hearing and articulate facts sufficient to establish a basis for any change to that

---

**6.** According to a 1996 letter written to the Family Court by a family services specialist from the Department of Services for Children, Youth and Their Families, the agency first became involved with the family in 1994. During that year, Mother filed a complaint that Father was sexually abusing the older child, which was later determined to be unfounded. Also during that year, Mother had taken the children to Chicago without Father's knowledge, had given the younger child an aspirin which caused her to have a seizure, and appeared to hospital officials to be emotionally unstable. The letter noted that Father appeared to be the more stable parent during the period the agency was involved with the family. Additional documents from Delaware State Hospital in the Family Court record indicate that Mother had mental health issues during 1995.

**7.** FAM. CT. CIV. R. 55.

**8.** DEL. CODE ANN. tit. 13, §§ 729(b) and 722.

arrangement.[9] Moreover, as the record in this case clearly reflects, Mother has had mental health issues in the past. The Family Court had a clear obligation to inquire into Mother's current circumstances, including her ability to manage residential custody of the parties' children.

### Denial of Motion to Reopen Judgment Constituted Abuse of Discretion

■■■ A motion to open a default judgment pursuant to Rule 60(b) is addressed to the sound discretion of the trial court.[10] When determining whether there has been an abuse of such discretion, this Court considers two questions: a) whether the defaulting party made some showing that, if relief were granted, the outcome of the action might be different from what it would be if the default judgment were allowed to stand; and b) whether substantial prejudice would be caused to the non-defaulting party by granting the motion.[11] Family Court Civil Rule 60(b) is accorded a liberal construction because of the underlying policy favoring a hearing on the merits rather than the entry of a default judgment.[12]

■■■ We find that the Family Court also abused its discretion by denying Father's motion to reopen the judgment. There was clearly a sufficient showing by Father that a hearing on the merits might have yielded a different result. There was also no indication that Mother would suffer any

prejudice if the judgment were reopened. Given the documentation in the record concerning Mother's past mental health problems, the significant medical problems of the parties' Down's syndrome child, as well as Father's representation, which Mother did not dispute, that he had arrived for the hearing only several minutes late, it was a clear abuse of discretion for the Family Court to refuse to reopen the judgment for a hearing on the merits of Mother's motion.[13]

### Conclusion

The Family Court abused its discretion by entering what amounted to a default judgment against Father without holding a hearing to determine the "best interests of the child," and abused its discretion by denying Father's motions to reopen the judgment. The judgment of the Family Court is, therefore, REVERSED and this matter is REMANDED to the Family Court for an expedited hearing on the merits of Mother's motion for modification of the prior consent order. The hearing shall take place within 30 days of the date of this Order. Jurisdiction is not retained.

9. *Fisher v. Fisher*, 691 A.2d 619, 623 (Del. 1997) (holding that the Family Court must address explicitly each of the factors outlined in § 722 prior to initiating a dramatic change in the children's living arrangements.)

10. *Tsipouras v. Tsipouras*, 677 A.2d 493, 495 (Del.1996) (citing *Reynolds v. Reynolds*, 595 A.2d 385, 389 (Del.1991)).

11. Id.

12. Id.

13. We also note that the record indicates that the Family Court had jurisdiction to consider Father's motion to reconsider, since his notice of appeal had not yet been docketed in the Supreme Court.