IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MADISON FETHER,[1] | § | |
| | § | No. 387, 2019 |
| Respondent Below, | § | |
| Appellant, | § | Court Below: Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN10-04926 |
| DEAN MCDEW, | § | Petition No. 19-15175 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: June 1, 2020
Decided: August 6, 2020

Before **SEITZ**, Chief Justice; **VAUGHN**, and **MONTGOMERY-REEVES**, Justices.

## **O R D E R**

Upon consideration of the parties' briefs and the record of the case, it appears that:

(1) This is a custody case in which the appellant, Madison Fether (the Mother), appeals from a Family Court decision denying her motion to reopen a default judgment. We begin with the procedural history of the case.

(2) The Mother and the appellee, Dean McDew (the Father), have two children together: Benjamin McDew (the Son) and Laura McDew (the Daughter).

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

On December 27, 2010, the Mother and Father entered into a consent custody order in which they agreed to joint custody with the Mother having primary residential placement of both children. The Father had visitation every Wednesday and Thursday overnight and every other weekend from Friday at 6:30 p.m. until Sunday at 12:00 p.m.

(3) On September 17, 2015, the Mother filed a petition to modify the consent order to eliminate the Father's Wednesday and Thursday overnight visits while school was in session. The Father responded with a "counterclaim" requesting that his weekend visitations with the children be extended through Monday morning. The Father's request would result in shared residential placement of the children.

(4) On December 5, 2016, after a full hearing, the Family Court entered an order that gave the parties shared residential placement of both children on a week-on, week-off basis.

(5) On May 1, 2019, the Father filed a petition to modify the December 5, 2016 order to give him primary residential custody of the Daughter and the Mother primary residential custody of the Son. This petition was brought on by charges against the Son alleging that he had sexually assaulted the Daughter. The Son entered into a plea agreement in connection with the charges in which he agreed to have no contact with the Daughter without counselor approval. At that time the Son was staying with the maternal grandparents as needed to avoid any contact with the

2

Daughter. The Father's petition stated his concern that the Mother intended to have the Son rejoin her household with the Daughter.

(6) The Mother answered the petition *pro se* on June 27, 2019. She indicated that she did "intend to integrate [the Son] back into the household at some point, as seen fit by the courts and both [the Daughter's] and [the Son's] counselors."[2] She also requested that she be granted primary residential placement and sole custody of the Son as the Father "has been absentee during the entire process with [the Son]."[3]

(7) The Family Court scheduled a mediation for July 18, 2019. On July 1, 2019, the court prepared notices of the hearing in the usual form, one each for the Father, Father's attorney, and Mother. The Father appeared at the mediation, but the Mother did not appear. The Family Court mediator then signed a "Request for Default Custody Order." The text above the mediator's signature reads, "[p]arties shall have joint custody of both children listed above. Mother shall have primary placement of [the Son]. Father shall have primary placement of [the Daughter]. Visitation as mutually agreed upon by the parties. [The Daughter] shall continue with counseling."[4] On July 19, 2019 the Family Court judge "So Ordered" the just quoted text below the mediator's signature, thereby entering default judgment against the Mother.[5]

---

[2] App. to Appellant's Opening Br. at A36.
[3] *Id.*
[4] *Id.* at A47.
[5] *Id.*

(8) The Mother then secured counsel and filed a motion to reopen the default judgment on August 6, 2019. She claimed not to have received the notice of the mediation until July 24, 2019. On the same day, August 6, she also filed a motion to modify the custody order entered by default on July 19.

(9) On August 16, 2019, the Family Court judge summarily denied the Mother's motion to reopen the default custody order in a one-sentence order.[6] On September 3, 2019, the Mother filed a motion for interim relief requesting that the Family Court award her joint legal custody and shared residential placement of the Daughter on an interim basis, subject to any no-contact orders against the Son. On September 5, 2019, she appealed the Family Court judge's August 16, 2019 order denying her motion to reopen the default custody order to this Court. With her notice of appeal, she filed a motion for expedited scheduling. The motion for expedited scheduling was granted on September 24 2019, and the parties were directed to file memoranda of law setting forth their positions. While the appeal was pending in this Court, the Family Court denied the Mother's motion for interim relief on the ground that it lacked jurisdiction to act upon the motion while the appeal was pending in this Court.

(10) On October 24, 2019, this Court remanded the case to the Family Court with instructions that the Family Court judge file a decision on the Mother's motion

---

[6] Appellant's Opening Br. Ex. A.

to reopen, with reasons, within 15 days.[7] Jurisdiction was retained.

(11) On October 30, 2019, the Family Court judge issued and filed with this Court an order denying the Mother's motion to reopen the July 19, 2019 default custody order.[8] The Court, relying on its records, rejected the Mother's contention that she did not receive notice of the July 18, 2019 mediation until July 24, 2019. It reasoned that the Court's records showed that the notice was sent on July 1, 2019 and that a notice properly addressed and duly mailed is presumed to have arrived at the mailing address in due course, or, in this case, well before the July 18, 2019 mediation.[9] The Court concluded that the mother had not shown excusable neglect to explain her failure to attend the mediation.

(12) The Court also found the Mother had not shown that the result would be different if her motion to reopen was granted. In connection with this finding, the Court stated:

> Mother is correct to allege a hearing would require an assessment of the best interest factors under 13 *Del. C.* § 722, 728 and 729. Whereby based on Mother's own claim of her intention to reintegrate [the Son] into her home validates the Court's decision; it is in [the Daughter's] and

---

[7] *Fether v. McDew*, No. 387, 2019, at 5 (Del. Oct. 24, 2019) (ORDER).

[8] Appellant's Opening Br. Ex. B.

[9] In its October 30, 2019 order, as proof that the court mailed the mediation hearing notice to the Mother on July 1, 2019, the Family Court referred the reader to Exhibit A. However, no Exhibit A was attached to the order and nothing that appeared to be Exhibit A could be found in the record as transmitted. On April 24, 2020, the Clerk of this Court submitted a letter to the Family Court judge asking him to explain the missing Exhibit A. The Family Court judge responded on May 6 by providing copies of the July 1, 2019 notice of hearing prepared for the Mother, as well as the notices prepared for the Father and his attorney.

5

[the Son's] best interest not to share residential placement in the same home.[10]

(13) Finally, the Court found that if the matter were reopened, both the Father and the children would be prejudiced. The Court reasoned that the default order allowed for meaningful contact and visitation for both parents, and "separate residential placement provides a protective element given the severe nature of the allegations against [the Son]."[11] The Court further reasoned that reopening the matter "would cause substantial prejudice for all parties, as it would prevent the permanency needed for both [the Daughter] and [the Son] to uphold a healthy future."[12]

(14) The Mother continues to argue that she did not receive notice of the July 18, 2019 mediation until July 24, 2019. She also attacks the Family Court's findings in its October 30, 2019 order that the result would not be different if her motion to reopen was granted. She contends that the Family Court was required to apply the standard set forth in 13 *Del. C.* § 729(c)(2) before modifying the December 6, 2016 order. That section sets forth the standard to be applied when an application to modify an order entered after a full hearing on the merits concerning the legal custody of a child or the child's primary placement is filed more than two years after

---

[10] *Id.* at 6.
[11] *Id.* at 7.
[12] *Id.*

6

the order is entered. That standard includes a requirement that the Family Court consider the factors set forth in §722 before modifying the prior order. She also argues that the Family Court erred in concluding that a reopening of the case would prejudice to both the Father and the children. The Father has responded in opposition to each of the Mother's arguments.

(15) The Family Court's entry of default judgment against a party for failing to appear is reviewed by this Court for abuse of discretion.[13] "A motion to open a default judgment pursuant to Rule 60(b) is addressed to the sound discretion of the trial court."[14]

(16) We agree with the Mother's contention that the Family Court was required to apply the standard set forth in 13 *Del. C.* § 729(c)(2), which incorporates the best interest factors set forth in §722, before modifying the December 5, 2016 custody order. In *Tatum v. Yost*, which also involved a motion to modify a prior custody order, we held that "[w]hen deciding residential custody, or when otherwise making a substantial change in a child's living arrangement, the Family Court is required to determine what is in the best interests of the child." [15] We also ruled that the Family Court "is required to make a best interests determination even if one of

---

[13] *Harper v. Harper*, 826 A.2d 293, 296 (Del. 2003) (per curiam).
[14] *Tsipouras v. Tsipouras*, 677 A.2d 493, 495 (Del. 1996) (citing *Reynolds v. Reynolds*, 595 A.2d 385, 389 (Del. 1991) (citing *Battaglia v. Wilm. Sav. Fund Soc'y*, 379 A.2d 1132, 1135 (Del. 1977))).
[15] 931 A.2d 438, 2007 WL 2323791, at *2 (Del. Aug. 15, 2007) (ORDER).

the parties is in default."[16]  The best interest analysis requires the Family Court to consider "all relevant factors" including those listed in 13 *Del. C.* § 722.[17]  We additionally expressed a preference that the Family Court "explicitly refer to the statutory factors of [§] 722 when determining the best interests of a child."[18]

(17)  We also addressed a default judgment in a custody case in *Harper v. Harper*.  There, we reviewed the Family Court's denial of a father's motion to reconsider the court's denial of his previous motion to reopen a default judgment the court had entered against him.[19]  The mother filed a petition to modify a prior custody order.  The father filed a response disputing the mother's petition, but he did not appear at the appointed time when the mother's petition was to be heard.  The Family Court issued a new custody order entering mother's requested modifications, which we described as tantamount "to a[n entry of] default judgment against [f]ather."[20]  The father subsequently filed a motion to reopen, which the Family Court denied.  Then, the father filed a motion for the court to reconsider its denial, which the Family Court also denied.  In relevant part, the father alleged that the Family Court "erred by . . . failing to apply the 'best interests of the child' standard in determining whether primary residential custody of the children should be awarded to

---

[16] *Id.* (citing *Harper*, 826 A.2d at 296).
[17] *Id.*
[18] *Id.*
[19] *Harper*, 826 A.2d at 294.
[20] *Id.*

8

[m]other."[21]  On appeal, we found that "the Family Court's entry of a default judgment against [f]ather without determining 'the best interests of the child' in accordance with the required statutory factors constituted a clear abuse of discretion."[22]  The same applies here.  The Family Court's entry of default judgment on July 19, 2019 without consideration of the best interest factors was an abuse of discretion.[23]

(18)  The Family Court's denial of the Mother's motion to reopen the default judgment as explained in its October 30, 2019 order does not cure its abuse of discretion in entering the default judgment.  The Court's finding that the Mother's intention to reintegrate the Son into her home validated the Court's decision does not fairly characterize her intent as expressed in her answer to the Husband's petition.  In her answer, she specifically qualified her intent to reintegrate the Son into her home as being subject to the approval of the Family Court and both children's counselors.  In any event, the October 30, 2019 order falls far short of a consideration of all of the required statutory best interest factors.  The denial of the

---

[21] *Id.* at 296.

[22] *Id.* (footnote omitted).

[23] The parties spent considerable time and effort arguing the Mother's claim that she did not receive her notice of the July 18, 2019 mediation until July 24.  The issue has been complicated by the fact that the postage meter strip on the envelope containing the notice does not bear a date.  Actually, there are two postage meter strips on the envelope, one for $.47 and one for $.03, neither of which bear a date, but there is no indication on the envelope that it was at any time returned to sender.  In any event, we are not inclined to disturb the Family Court's finding that the notice was mailed on July 1.

motion to reopen the default judgment must give way to the abuse of discretion in entering the default judgment to begin with.[24]

(19) Finally, the Mother asks us to direct the Chief Judge of the Family Court to assign the case to a different Family Court judge on remand. She first made this request in her memorandum of law filed after her motion for expedited scheduling was granted. When we issued our remand order of October 24, 2019, we denied the request because the record was insufficient to show bias. The Mother now makes the same arguments for assigning the case to a different judge that she made before, with the addition of a new argument based on the Family Court judge's October 30, 2019 order denying her motion to reopen the default judgment. The Mother argues that the Family Court judge has foreordained an outcome in favor of the Father by finding in that order that "[i]f the matter were reopened, the outcome would not

---

[24] In a footnote, the Mother also argues that the default judgment was entered in violation of Family Court Civil Rule 55. That rule provides that "[a] party entitled to a judgment by default shall apply to the Court therefor or the Court on its own motion may order a judgment by default when the interest of justice so requires[.]" Fam. Ct. Civ. R. 55(a). In this case the judgment by default was entered by the Court on its own motion. The court mediator, not the Father, signed the "Request for Default Custody Order." But the Court made no finding that the interest of justice required the entry of default judgment. The rule also provides that where a party has entered an appearance, as the Mother did here by filing an answer, the party or her representative "shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." *Id.* In this case, the Mother was not served with written notice of the "Request for Default Custody Order" and no hearing was held. Since Rule 55 was not raised by the Mother in the proceedings below and was mentioned only in a footnote in her opening brief on appeal, we do not base our ruling on Rule 55. But we do observe that there does appear to be a substantial question as to whether the default judgment entered in this case was entered in violation of Rule 55.

10

change."[25] However, making an assessment of whether an outcome may be different is a necessary part of the judicial analysis of a motion to reopen a default judgment. There is no general rule that a trial judge is disqualified because the judge made a judicial ruling adverse to a party earlier in a proceeding.[26] There are no unusual circumstances here that would move us to direct the Chief Judge to consider reassigning the case to a different trial judge.

NOW, THEREFORE, IT IS ORDERED that the Family Court Orders dated August 16, 2019 and October 30, 2019 denying the Mother's motion to reopen the default judgment entered July 19, 2019 are REVERSED; the default judgment entered July 19, 2019 is VACATED; and the case is REMANDED for further proceedings consistent with this Order. On Remand, the Family Court should hold a full hearing on the merits of the parties' motions to modify custody as expeditiously as feasible. Jurisdiction is not retained.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[25] Appellant's Opening Br. at 39 (quoting Appellant's Opening Br. Ex. B at 8 (emphases omitted)).
[26] *Beck v. Beck*, 766 A.2d 482, 485 (Del. 2001).